UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYNTHIA FAREED AND JAMES MASELAN, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF JASER AL-RAKAH, CYNTHIA FAREED AND JAMES MASELAN, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF THEEB AL-YAMI, ANNA SEPANEK, INDIVIDUALLY, TYLER SAN JURJO, PPA ANNA SEPANEK, ISABELLA SAN JURJO, PPA ANNA SEPANEK, JENNIFER GALLUCCI, INDIVIDUALLY, BRAYDEN GALLUCCI PPA JENNIFER GALLUCCI, and SOFIA GALLUCCI PPA JENNIFER GALLUCCI, <br><br> Plaintiffs, <br><br> v. <br><br> CENTRAL RIVERS POWER MA, LLC, WARE RIVER POWER, INC., and JOHN DOE #1, <br><br> Defendants. | Civil Action No. 3:20-11053-MGM |

MEMORANDUM AND ORDER CONCERNING WARE RIVER POWER, INC.'S
MOTION TO COMPEL FEDERAL ENERGY REGULATORY COMMISSION TO
RESPOND TO DOCUMENT ONLY SUBPOENA
(Dkt. No. 51)

ROBERTSON, U.S.M.J.

I. Introduction

Defendant Ware River Power, Inc. ("WRPI") operates a hydroelectric dam known as the Red Bridge Project in Wilbraham. Below the dam, on the Chicopee River, there is a recreational

1

area known as the Red Bridge State Park that was deeded to the Commonwealth of Massachusetts to serve as a public recreational area. On or around June 29, 2018, there was an unanticipated release of water from the dam, allegedly causing the deaths and injuries that are the subject of this suit. Before the court is WRPI's motion to compel the Federal Energy Regulatory Commission ("FERC") to comply with its subpoena requiring FERC, a non-party responsible for licensing the dam, to produce documents related to the Red Bridge Project, the Red Bridge State Park, and the events at issue in this case (Dkt. No. 51). For the reasons set forth below, the court denies WRPI's motion without prejudice.

    II.    Background

        A.  <u>Allegations in the Complaint.</u>

The plaintiffs allege that on or around June 28, 2018, lightning struck the Red Bridge Project, damaging parts of the dam's computer operating system (Compl. ¶ 14). On June 29, 2018, John Doe #1, the plant operator, discovered the damage and reset certain dam functions for manual operation (Compl. ¶ 16). In the afternoon, after attempting to repair the operating system, John Doe #1 brought the dam back on-line and restarted the dam's operations in auto mode (Compl. ¶ 17). His actions caused a rapid and massive release of water through and over the dam (Compl. ¶ 18). The result was tragic for Theeb Al-Yami, Jaser Al-Rakah, Tyler San Jurjo, Isabella San Jurjo, Anne Sepanek, Brayden Gallucci, Sofia Galluci, and Jennifer Galluci, all of whom were in the recreational area downstream. Theeb Al-Yami and Jaser Al-Rakah drowned while trying to save the lives of Tyler San Jurgo, Brayden Galluci, Jennifer Gallucci, and Anna Sepanek (Compl. ¶¶ 32-35). Tyler San Jurgo, Brayden Galluci, Jennifer Gallucci, and Anna Sepanek struggled in the water "for the better part of a half of an hour" while Isabella San

Jurjo and Sofia Gallucci watched from the shore (Compl. ¶¶ 31, 38). Plaintiffs' claims of negligence, gross negligence, and emotional distress arise from these events.

      B.  <u>Subpoena to FERC.</u>

The Red Bridge Project is licensed by FERC and maintained by Massachusetts state agencies (Compl. ¶ 6). On August 14, 2020, WRPI served a Documents Only Subpoena on FERC (Dkt. No. 52-1) requesting:

> (1) <u>A certified copy</u> of any and all documents, reports, memoranda, notices, letters, e-mails and any other communications and/or correspondence from June 1, 2013 to present regarding the [Red Bridge Project] between the Federal Energy Regulatory Commission, its employees, agents, or representatives (including their attorneys) and (i) Central Rivers Power MA, LLC (f/k/a Nautilus Hydro, LLC); (ii) Ware River Power, Inc.; (iii) Essential Power Massachusetts, LLC; (iv) Commonwealth of Massachusetts Department of Conservation and Recreation; and (v) any other agency or department of the Commonwealth of Massachusetts, including any of the agents, servants, contractors, subcontractors, and/or employees of the aforementioned (including their attorneys).
>
> (2) <u>A certified copy</u> of any and all documents, reports, memoranda, notices, letters, e-mails and any other communications and/or correspondence from June 1, 2013 to present regarding Red Bridge State Park between the Federal Energy Regulatory Commission, its employees, agents, or representatives (including their attorneys) and (i) Central Rivers Power MA, LLC (f/k/a Nautilus Hydro, LLC); (ii) Ware River Power, Inc.; (iii) Essential Power Massachusetts, LLC; (iv) Commonwealth of Massachusetts Department of Conservation and Recreation; and (v) any other agency or department of the Commonwealth of Massachusetts, including any of the agents, servants, contractors, subcontractors, and/or employees of the aforementioned (including their attorneys).
>
> (3) <u>A certified copy</u> of any safety inspections, assessments, or studies done regarding the [Red Bridge Project] from June 1, 2013 to present.
>
> (4) <u>A certified copy</u> of any safety inspections, assessments, or studies done regarding the Red Bridge State Park from June 1, 2013 to present.
>
> (5) <u>A certified copy</u> of any and all documents, reports, memoranda, notices, letters, e-mails and any other communications and/or correspondence relating to an alleged incident of June 29, 2018 involving, *inter alia*, the above captioned parties.

(6) A certified copy of any and all documents, reports, memoranda, letters, charts, graphs, photographs, videos, letters, e-mails, and any other communications and/or correspondence related to an August 7, 2018 inspection and test flow condition simulation.

(7) A certified copy of any and all documents, reports, memoranda, notices, letters, e-mails and any other communications and/or correspondence relating to signage at the [Red River Project] from June 1, 2013 to present.

(8) A certified copy of any and all documents, reports, memoranda, notices, letters, e-mails and any other communications and/or correspondence relating to signage at Red Bridge State Park from June 1, 2013 to present.

(9) A certified copy of any and all documents, reports, memoranda, notices, letters, e-mails and any other communications and/or correspondence relating to any incidents, accidents, injuries, or other events involving personal injury and/or property damage related to the [Red River Project] from June 1, 2013 to present.

(10) A certified copy of any and all documents, reports, memoranda, notices, letters, e-mails and any other communications and/or correspondence relating to any incidents, accidents, injuries, or other events involving personal injury and/or property damage related to Red River State Park from June 1, 2013 to present.

The subpoena was accompanied by a cover letter that directed FERC to produce the requested records accompanied by an affidavit certifying, pursuant to Mass. Gen. Laws ch. 233, § 79J, that the enclosed documents were a true, accurate, and complete set of records on file at FERC related to the Red Bridge Project (Dkt. No. 52-1 at 1, 6).

On September 18, 2020, FERC responded to WRPI's subpoena, noting that the production of documents by federal agencies is governed by an agency's *Touhy* regulations and setting forth the regulations for WRPI's information (Dkt. No. 52-2). FERC's regulations governing responses to subpoenas, set forth in 18 C.F.R. § 388.111, require a requesting party to provide a statement of the party's interest, the relevance of the requested documents, and a discussion of whether the documents are available from other sources. *See id.*

In response, on October 13, 2020, WRPI sent a letter to FERC's Office of the General Counsel purportedly requesting the documents listed in the subpoena pursuant to FERC's *Touhy*

regulations (Dkt. No. 52-3). The letter briefly described the pending litigation, WRPI's understanding of FERC's role in regulating the Red Bridge Project and an investigation WRPI believed FERC had conducted into the events at the Red Bridge Project and the Red Bridge State Park on June 28-29, 2018, and asserted that "as FERC was the government agency responsible for regulating the Red Bridge Project, these documents [were] not reasonably available from other sources" (Dkt. No. 52-3 at 2). In summary, FERC's response to WRPI was that most, if not all, of the documents WRPI was seeking were most likely available from sources other than FERC and that WRPI was required to demonstrate that it had exhausted other sources for the requested documents before FERC had an obligation to produce documents in response to a subpoena (Dkt. No. 52-6 at 1).

On January 20, 2021, WRPI submitted a Freedom of Information Act ("FOIA") request to FERC seeking all of the documents listed in the subpoena (Dkt. No. 52-4). FERC's response identified FERC's eLibrary database as a source of publicly available documents, requested that WRPI narrow its request for non-public documents so that the request could be processed, and explained that material released pursuant to FOIA generally was not certified (Dkt. No. 52-5).

WRPI then renewed its demand to FERC for production of all of the documents it had requested, stating that it required certified copies of documents for purposes of admissibility at trial, and informed FERC (politely) that it would file a motion to compel if FERC did not comply with the subpoena as served (Dkt. No. 57-1 at 32-33).

    III.    Discussion

        A.  <u>Standard of Review</u>

"The Housekeeping Act, 5 U.S.C. § 301, authorizes federal agencies to create rules governing discovery and disclosure. [*United States ex rel.*] *Touhy* [*v. Ragan*, 340 U.S. 462

(1951)] affirms this authority." *Cabral v. U.S. Dep't of Justice*, 587 F.3d 13, 22 (1st Cir. 2009) (citing *Puerto Rico v. United States*, 490 F.3d 50, 61 (1st Cir. 2007), *cert. denied*, 552 U.S. 1295 (2008)). Such rules and regulations are commonly referred to as "*Touhy* regulations," following the decision in *Touhy*. "To obtain information from a federal agency, a party 'must file a request pursuant to the agency's regulations, and may seek judicial review only under the [Administrative Procedures Act ("APA")]." *Id.* at 23 (quoting *Puerto Rico*, 490 F.3d at 61 n.6). It is well-settled that this rule applies when the agency action under review is a response to a subpoena for documents. *See, e.g., Bobreski v. U.S. E.P.A.*, 284 F. Supp. 2d. 67, 73-74 (D.D.C. 2003) ("A party challenging an agency's *Touhy*-based denial of a subpoena or request for testimony 'must proceed under the APA … .") (quoting *Houston Bus. Journal v. Office of Comptroller of Currency*, 86 F.3d 1208, 1212 n.4 (D.C. Cir. 1996)); *see also Barnett v. Ill. State Bd. of Ill.*, No. 02 C 2401, 2002 WL 1560013, at *1 (N.D. Ill. July 2, 2002) ("The bottom line … is that the Department's refusal to comply with plaintiffs' subpoena, which was made pursuant to its *Touhy* regulations, must be reviewed under the standard set forth in the APA, 5 U.S.C. § 706(2)(A)."). Indeed, WRPI stands silent in response to FERC's contention that its response to WRPI's subpoena must be judged under APA standards.

Under the APA, this court may overturn FERC's decision not to produce documents in response to WRPI's subpoena as served only if that decision was "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Cabral*, 587 F.3d at 23 (*quoting* 5 U.S.C. § 706(2)(A)). This "exceedingly deferential" standard examines "'whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgement.'" *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996) (quoting *N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1538 (11th Cir. 1990)). "[T]he reviewing

court is limited to the administrative record as it existed at the time of the agency's decision." *Westchester Gen. Hosp., Inc. v. Dep't of Health & Human Servs., Ctr. for Medicare & Medicaid Servs.*, 770 F. Supp. 2d 1286, 1289 (S.D. Fla. 2011), *aff'd* 443 F. App'x 407 (11th Cir. 2011) (citing *C.I.R. v. Neal*, 557 F.3d 1262, 1279 (11th Cir. 2009)).

        B.   FERC's *Touhy* Regulations

FERC's *Touhy* regulations specify the procedures that FERC applies to requests for information, including by subpoena. *See* 18 C.F.R. §§ 388.101, 388.111. *Touhy* regulations do not create a substantive entitlement to withhold documents, rather they "set forth administrative procedures to be followed when demands for information are received." *Puerto Rico*, 490 F.3d at 61-62 (quoting *Kwan Fai Mak v. FBI*, 252 F.3d 1089, 1092 (9th Cir. 2001)). FERC's *Touhy* regulations describe the procedures for obtaining documents that are available in the agency's Public Reference Room and on its web site, 18 C.F.R. § 388.106; the process for requesting FERC documents that are not publicly available, 18 C.F.R. § 388.108; and FERC's procedures for responding to a subpoena. *See* 18 C.F.R. § 388.111 ("Section 388.111"). Read as a whole, FERC's *Touhy* regulations direct individuals seeking FERC documents to FERC's Public Reference Room or its eLibrary database in the first instance. FERC represents that most publicly available FERC documents can be obtained from the database (Dkt. No. 57 at 15 n.8). To the extent an individual seeks a document that is not publicly available and therefore not available in the reference room or the eLibrary database, the regulations direct the submission of a FOIA request. 18 C.F.R. § 388.108. By regulation, FERC's responses to FOIA requests are prioritized by the volume and complexity of the request. 18 C.F.R. § 388.108(b).

Section 388.111 provides, in pertinent part, that "[a] subpoena … must furnish a statement to the General Counsel of the Commission. This statement must set forth the party's interest in the case or matter, the relevance of the desired testimony or documents, and a

discussion of whether the desired testimony or documents are reasonably available from other sources." 18 C.F.R. § 388.1111(c).  Factors that FERC is entitled to consider in determining whether to provide information in response to the subpoena include "the need to conserve the time of employees for conducting official business; the need to avoid spending time and money of the United States for private purposes; the need to maintain impartiality between private litigants in cases where substantial government interest is not involved; and the established legal standards for determining whether justification exists for the disclosure of confidential information and records." 18 C.F.R. § 388.111(e).

### C. FERC's Response to WRPI's Subpoena

FERC concedes that WRPI adequately set forth its interest in the case and the relevance of the desired documents in its so-called *Touhy* request (Dkt. No. 52-3).  FERC took the position, however, in response to WRPI's subpoena, and contends before this court, that WRPI had an obligation under FERC's *Touhy* regulations to exhaust other sources for obtaining documents before subpoenaing those documents from FERC (Dkt. No. 57-1 at 38; Dkt. No. 57 at 1-2). FERC has not taken the position that it has no obligation to respond to a properly limited WRPI subpoena served after WRPI has exhausted other potential sources of relevant documents (Dkt. No. 57 at 2; Dkt. No. 57-1 at 1)).  For its part, WRPI has not argued that the documents it seeks from FERC are not available from other sources (Dkt. No. 52 at 10), or that it took reasonable steps to obtain documents from other possible sources before serving its subpoena on FERC. The justification WRPI has advanced for demanding that FERC respond to its subpoena as

served is that it requires certified documents to ensure admissibility at trial (Dkt. No. 52 at 11-12).[1]

This court finds that it was not arbitrary or capricious for FERC to take the position that, many, if not all, of the documents WRPI was requesting via its subpoena were likely to be available through FERC's eLibrary database or from a source other than FERC and that WRPI could establish admissibility by means other than certification of each document responsive to the broad requests in the WRPI subpoena.  First, FERC directed WRPI to its eLibrary as a possible source for some of the documents listed in the subpoena.  As FERC points out, "the bulk of caselaw examining the question ha[s] found that screenshots and documents from government websites, when the source [is] identifiable, constitute[] 'other publications' within the meaning of [Federal Rule of Evidence] 902(5)" and are self-authenticating for purposes of admissibility in federal court.  *Hawkes v. BSI Fin., Inc.*, 444 F. Supp. 3d 260, 266-67 (D. Mass. 2020) (citing *Williams v. Long*, 585 F. Supp. 2d 679, 685-90 (D. Md. 2008)); *see also Paralyzed Veterans of Am. v. McPherson*, No. C 06-4670 SBA, 2008 WL 4183981, at *7 (N.D. Cal. Sept. 9, 2008) ("Federal courts consider records from government websites to be self-authenticating under Rule 902(5)." (citing *Estate of Gonzales v. Hickman*, No. ED CV 05-660 MMM (RCx), 2007 WL 3237727, at *2 n.3 (C.D. Cal. May 30, 2007))).  Similarly, documents produced in response to FOIA requests generally are admissible as self-authenticating.  *See Marcus v. Am.*

---

[1] Perhaps because this case was filed in state court and removed to federal court based on diversity, WRPI's subpoena to FERC was accompanied by a request for an affidavit – provided with the subpoena – pursuant to Mass. Gen. Laws ch. 233, § 79J attesting to the accuracy and completeness of the documents being produced by FERC in response to the subpoena (Dkt. No. 52-1 at 6).  Federal courts generally "apply the Federal Rules of Evidence in diversity cases," *U.S. Bank Trust, N.A. as Tr. for LSF9 Master Participation Tr. v. Jones*, 925 F.3d 534, 539 (1st Cir. 2019) (citing *Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1, 8 (1st Cir. 2011)), and, barring any state law substantive evidentiary rule required to be applied, the court will apply federal standards as to the procedure for obtaining, and the potential admissibility of, any documents that WRPI seeks from FERC  *See id.*

*Contract Bridge League, Inc.*, Civil Action No. 17-11165-FDS, 2021 WL 1132161, at *13-14 (D. Mass. Mar. 24, 2021) (holding that counsel's attestation that the documents at issue were produced by the Department of Labor in response to a FOIA request was adequate authentication); *see also Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co.*, 433 F. Supp. 2d 933, 944 (N.D. Ind. 2005) (holding that government reports obtained in response to a FOIA request were admissible pursuant to Rules 901(7) and 902(5)).

Second, documents listed in the subpoena included, *inter alia*, communications between FERC and WRPI and FERC and defendant Ware River Power, Inc., as well as documents related to safety inspections of the dam and the park, documents related to the events that are the subject of plaintiffs' claims and to a test flow simulation of conditions at the time of those events, and documents related to accidents or injuries at the site of the dam. It was not arbitrary or capricious for FERC to rely on the likelihood that such documents were in the possession of one or more of the parties and had been, or would or could be, produced in response to written discovery conducted by the parties, nor was it beyond the pale for FERC to rely on the generally accepted principle that "[d]ocuments produced in discovery are deemed authenticated." *Ramirez-Lluveras v. Pagan-Cruz*, 833 F. Supp. 2d 165, 170 (D.P.R. 2011) (citing cases); *see also Joseph v. Lincare, Inc.*, 989 F.3d 147, 156-57 (1st Cir. 2021) (stating that when a party produces a document in discovery, "the other parties should be able to treat the document as authentic unless someone offers some reason to think otherwise, before it is too late to do something about it").

Further, it was not arbitrary or capricious for FERC to interpret Section 388.111 as requiring WRPI to demonstrate that the documents it sought by its subpoena were not reasonably available from another source before it turned to FERC for information (Dkt. No. 57-1 at 39).

"In general, an agency's 'choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources.'" *Puerto Rico*, 490 F.3d at 61 (quoting *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 278 (4th Cir. 1999)). FERC's *Touhy* regulations, like the *Touhy* regulations of other federal agencies, are designed in significant part to reduce the burden on FERC of responding to third-party requests for information. While "any given request may seem small in isolation, … an agency has an interest in protecting itself against the *cumulative* disruption to its duties that would come with routinely granting requests for [information]." *Westchester Gen. Hosp., Inc.*, 770 F. Supp. 2d at 1298 (citing *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1198 (11th Cir. 1991)). FERC's attempts to communicate this principle to WRPI have apparently fallen on deaf ears.

WRPI's motion to compel is denied because FERC's determination that WRPI did not make reasonable efforts to obtain documents from other sources before turning to FERC was not arbitrary or capricious. The court notes that FERC does not assert that its *Touhy* regulations shield it from an obligation to respond to a subpoena from WRPI that satisfies FERC's *Touhy* regulations. The court anticipates that WRPI and FERC will comply with their obligations to confer under Fed. R. Civ. P. 37(a) and Local Rule 7.1(a)(2) before renewing their dispute before the court. It is nonetheless possible that there will remain a genuine dispute about the extent of FERC's obligation to respond to a subsequent WRPI subpoena. Accordingly, WRPI's motion to compel is denied without prejudice.

IV.   Conclusion

For the foregoing reasons, WRPI's Motion to Compel FERC to Respond to the Documents Only Subpoena (Dkt. No. 51) is DENIED without prejudice.

It is so ordered.

Dated: August 17, 2021                                           <u>Katherine A. Robertson</u>
                                                                 KATHERINE A. ROBERTSON
                                                                 U.S. MAGISTRATE JUDGE