```
                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS


                                )
CYNTHIA FAREED, et al.          )
                                )
        Plaintiffs,             )
                                )   Civil Action
v.                              )   No. 3:20-cv-11053-MGM
                                )
CENTRAL RIVERS POWER            )
MA LLC, et al.                  )
                                )
        Defendants.             )
                                )



          BEFORE THE HONORABLE KATHERINE A. ROBERTSON
                UNITED STATES MAGISTRATE JUDGE



                    CASE MANAGEMENT CONFERENCE




                       December 8, 2021



                    United States Courthouse
                   300 State Street, Suite 120
                  Springfield, Massachusetts 01105



                     Linda Walsh, RPR, CRR
                     Official Court Reporter
             John J. Moakley United States Courthouse
                   One Courthouse Way, Room 5205
                    Boston, Massachusetts 02210
                      lwalshsteno@gmail.com
```

```
 1   APPEARANCES:

 2   On Behalf of the Plaintiffs:

 3        LUBIN & MEYER, P.C.
          By: William J. Thompson, Esq.
 4            Julie A. Gielowski, Esq.
          100 City Hall Plaza, 4th Floor
 5        Boston, Massachusetts 02108
          617-720-4447
 6        bthompson@lubinandmeyer.com

 7        Cynthia Hazar Fareed, Esq.
          235 East 40th Street, Suite 6E
 8        New York, New York 10016
          631-839-9557
 9        cynthiahf@gmail.com

10
     On Behalf of the Defendant Central Rivers Power MA LLC:
11
          Morrison Mahoney LLP
12        By: Kathleen A. Federico, Esq.
          250 Summer Street
13        Boston, Massachusetts 02210
          617-493-7563
14        kfederico@morrisonmahoney.com

15
     On Behalf of the Defendant Ware River Power, Inc.:
16
          HAMEL, MARCIN, DUNN, REARDON & SHEA, P.C.
17        By: Ethan C. Ryder,  Esq.
          350 Lincoln Street, Suite 1101
18        Hingham, Massachusetts 02043
          617-482-0007
19        eryder@hmdrslaw.com

20

21

22             Proceedings recorded by sound recording and
                 produced by computer-aided stenography.
23

24

25
```

```
 1                    P R O C E E D I N G S
 2           (Recording begins at 2:30:11)
 3           THE CLERK:  In the matter of Fareed et al. versus
 4   Central Rivers Power MA LLC, Civil Action Number 20-11053.
 5           THE COURT:  All right.  And, counsel, if you would
 6   identify yourselves for the record.  I'll start with counsel
 7   for the plaintiffs again.
 8           MR. THOMPSON:  There's a couple of us today, Your
 9   Honor.  I'm William Thompson, and I represent all of the
10   plaintiffs.
11           MS. GIELOWSKI:  Good afternoon, Your Honor.  My name
12   is Julie Gielowski, and I represent the plaintiffs as well.
13           MS. FAREED:  Good afternoon, Your Honor.  Cynthia
14   Fareed.  I represent the plaintiffs as well.
15           THE COURT:  And who's here, then, on behalf of the
16   defendants?
17           MS. FEDERICO:  Good afternoon, Your Honor.
18           Kathleen Federico for Central Rivers Power.
19           THE COURT:  Central Rivers Power.
20           MR. RYDER:  And good afternoon, Your Honor.
21           Ethan Ryder for Defendant Ware River Power, Inc.
22           THE COURT:  And hello again.  It hasn't been very
23   long, but -- so remind me because I do -- I remember what the
24   case is about.  I'm reasonably familiar with the status, but we
25   started -- you started to tell me a little bit about where you
```

were.  We had set a deadline of December 1st of 2021 for completion of nonexpert discovery, then we set this case management conference and deadlines for expert disclosures following today's conference.  So from the plaintiffs' point of view, what, if anything, remains to be done with respect to nonexpert discovery?

MR. THOMPSON:  There's only one outstanding deposition.  It's of Mr. Heffernan.  It was noticed back in April of 2021.  However, he went into the service over the summer, and so we've agreed to let him finish his basic training and whatever next training he was at, and he's just been stationed, so we've been working to get that done.  But that's the only outstanding deposition from our side.

THE COURT:  And what is Mr. Heffernan's role in the case?

MR. THOMPSON:  He was one of the employees of Ware River Power.

THE COURT:  Okay.  So he would have knowledge of the operations of the dam and possibly knowledge about the water release?

MR. THOMPSON:  Right.  He is a percipient witness, we think.  So Lucas Wright was the 30(b)(6) designee for Ware River Power.  That deposition has been completed.

And then there were three employees who were reported to have been present that day or in the aftermath.  Two of

```
 1   those three have been deposed.  Mr. Heffernan is the one
 2   remaining.
 3            THE COURT:  Okay, okay.  All right.  Would it
 4   be -- okay.  And so the next steps we have -- the case is a
 5   2020 case, I think.  I mean, I know you've all worked hard on
 6   the case, and you've worked hard to keep discovery moving
 7   forward and, you know, really from the Court's -- during COVID,
 8   and from the Court's point of view, the Court appreciates the
 9   work that you've done in that regard.  I want to try to keep
10   the case on track.
11            What -- from -- let me ask -- because in many ways
12   this is a defendants' decision, is there any possibility that
13   the next step after the completion of nonexpert discovery would
14   be a request for mediation?  Is this a case where you would
15   need to hear from experts to know whether or not -- you know,
16   to make a decision about whether or not to mediate?  I'll hear
17   from Ms. Federico first and then from Mr. Ryder.
18            MS. FEDERICO:  I apologize, Your Honor.  I couldn't
19   find the "mute" button.
20            Yes, I mean, I believe we need to have expert
21   disclosure deadlines prior to mediation, although Mr. Ryder
22   might have more to add with regards to that.
23            THE COURT:  Okay.  Mr. Ryder?
24            MR. RYDER:  Yeah, Your Honor, I'm going to go with
25   what Attorney Federico said with respect to going into
```

1   disclosures before we enter into mediation.  That said, at
2   least as we sit here today, we are certainly open to the
3   prospect of mediation and think that this matter could be well
4   suited for mediation once the discovery is completed.
5            THE COURT:  And I'm turning to the defendants first
6   because, you know, in many ways the parties are in control of
7   the decision about whether or not a case can -- you know,
8   whether or not they're willing to sort of engage in good faith,
9   whether they're willing to make substantial efforts.  I mean,
10  this is a case involving very -- the most -- it's a terrible --
11  it's a terrible series of events here, and it's a terrible
12  outcome.  So, you know, mediating the case is not necessarily
13  going to be easy.  There are a number of people who are
14  involved with different kinds of claims, and that's not always
15  easy either.
16           Okay.  So it doesn't -- it did not sound to me -- the
17  plaintiffs would have the burden, I think, of making the first
18  expert disclosures.  That's -- I extended that to February 1st.
19  And while I sort of take the point that a percipient witness
20  hasn't been deposed yet, but still that doesn't necessarily
21  seem to me, Mr. Thompson, like a void that would require
22  delaying your expert disclosures.
23           MR. THOMPSON:  I agree.
24           THE COURT:  Okay.  So are you on track, then, to make
25  that disclosure by February 1st?

1         MR. THOMPSON: Yes, we are.

2         THE COURT: Good. Okay. Excellent. And same really
3    with respect to the defendants, I see no reason why a
4    percipient witness that was at least, even if he's not
5    currently employed by Ware River Power, was previously employed
6    by Ware River Power, that that would in any way require
7    deferring, delaying defendants' expert disclosures. Mr. Ryder?

8         MR. RYDER: Yeah, Your Honor, if I could just briefly
9    on that. Two of the depositions that we're waiting to take are
10   of the party plaintiffs, two of the minor plaintiffs that we
11   noticed originally back in September for depositions in
12   October, and the indication at the time was that we'd have to
13   find dates that occurred while the boys were on school
14   vacation. To date we haven't been provided with dates. So at
15   this point it's looking as though depositions would take place
16   during February vacation. We were actually hopeful tonight
17   that we might actually -- since we have all counsel here, that
18   we might actually be able to schedule those -- or get those
19   depositions on the books for February vacation, and just where
20   these two individuals had such an active role in the events --

21        THE COURT: Who are these two -- these are the two
22   children who were in the water?

23        MR. RYDER: That's right, Your Honor.

24        THE COURT: Okay. Yeah, but they're not going to
25   be -- they're not going to be a basis for the experts of the

1  expert disclosures.  You know, they were in the water.  They
2  don't have anything to do with how the dam operated.  They
3  don't have anything to do with, you know, whether it
4  malfunctioned, whether the employees behaved appropriately.
5  That's not going to be a basis for deferring your expert
6  disclosures.  I mean, that's a damages question; right?
7           MR. RYDER:  It is, Your Honor.  But I think it also
8  has to do with respect to the observations that were made by
9  the minors when they were in the water as pertains --
10          THE COURT:  How old are the children -- how old were
11 the children at the time of the incident?
12          MR. RYDER:  I believe eight and nine.
13          THE COURT:  Yeah, I'm not extending your deadline for
14 expert disclosures on that basis.  You will make your expert
15 disclosures by the deadline that's set forth in the existing
16 scheduling order.  I mean, when -- and when did this incident
17 occur?
18          MR. RYDER:  June 29th, 2018, Your Honor.
19          THE COURT:  2018.  More than three years ago; we're
20 talking about children.  Okay.  So, yeah, no, I don't see that
21 as a basis for delaying in any way the deadline for the
22 defendants to make their expert disclosures, nor do I see it as
23 a basis for needing to change or extend the deadline for
24 completion of expert depositions.  I see those as really having
25 to do with the operation of the, you know, of the dam, you

1  know, the perhaps adequacy of the signage, but not points on
2  which eight- and nine-year-old children could testify.
3            So, yes, get those depositions done, but that's, you
4  know, where the Court is with that.
5            I think my inclination, though, is to set a further
6  case management conference.  I do have -- I'm not sure if this
7  is a case that's going to lend itself to dispositive motions.
8  Ms. Federico, do you think that this -- but that's a point on
9  which I really don't, you know, don't sort of, you know, don't
10 really have enough knowledge, I think, to make a determination.
11           MS. FEDERICO:  Your Honor, I am not aware at this time
12 potentially -- there potentially will be dispositive motions.
13           THE COURT:  But you have -- have you identified a
14 basis or is that just something you're sort of reserving your
15 rights on?
16           MS. FEDERICO:  Yeah, we're reserving our rights.
17 We're still looking into it.
18           THE COURT:  All right, not a determination one way or
19 the other.
20           MR. RYDER:  The same as Ms. Federico, Your Honor.
21           THE COURT:  All right.  So I'm going to set a deadline
22 that's perhaps even in advance of the deadline for
23 disclosing -- for completing expert depositions just because I
24 want to know -- so in other words, the reason I'm going to come
25 back to the parties is you're saying that you -- you, the

1   defendants, are essentially saying, we don't think we can
2   really make a decision on whether or not to take the case to
3   mediation in advance of seeing the expert disclosures.  You'll
4   have the plaintiffs' expert disclosures by February 1st.
5   You'll have the opportunity to take the deposition of the
6   plaintiffs' expert anytime after the date on which those expert
7   disclosures are made.
8           So it seems to me that by, you know, late April
9   to -- you know, by late April you should be in a position to
10  know whether or not you think this is a case that you're
11  interested in taking to mediation.  If there's a genuine
12  commitment, you know, if the defendants think, you know, really
13  think in good faith they want to try to mediate the case, if
14  you've had discussions with the plaintiffs and, you know, both
15  parties can represent that they think mediation would be
16  helpful, I'd be willing to consider deferring deadlines for
17  dispositive motions.
18          But short of that, you know, I won't -- I don't want
19  to extend these deadlines again because -- for a number of
20  reasons, but because, you know, the case is going to -- it's
21  going to take a while.  If there are dispositive motions,
22  that's going to take a while.  I think the other thing I would
23  want to know at this case management conference that I am going
24  to try to schedule at the end of April or very, very early May
25  is whether or not there will be dispositive motions.  By then

1    you will have had the plaintiffs' -- you will have had the
2    plaintiffs' expert report for an extended period of time.  You
3    will have had the opportunity to really, you know, push and
4    prod at it and see what you think it establishes or doesn't
5    establish as a basis for liability, and you should, I think, by
6    then be well along in making the determination about whether or
7    not you have a basis for dispositive motions.
8            I mean, I'm not precluding, Mr. Thompson, that the
9    plaintiffs might -- might make such a motion, you know, a
10   partial motion for judgment in this case.  I'm not precluding
11   that.  It's unusual obviously for the plaintiffs to be moving
12   on that, but I'm not putting it out of the question.  But I
13   think -- you know, I think that makes sense in terms of, you
14   know, how to move the case forward and bring it to resolution.
15           Does that sound right to the plaintiffs?
16   Mr. Thompson, does that sound right to you?
17           MR. THOMPSON:  It does.  I should mention, though,
18   there is a potential snag, not from my standpoint, but -- I
19   expected defense counsel would have raised it by now, but I
20   received yesterday two additional deposition notices that are
21   scheduled for February, one is of the Federal Energy Regulatory
22   Commission and one is of the Massachusetts Department of
23   Conservation and Recreation, and I'm already working on expert
24   disclosures that are due February 1st.
25           THE COURT:  So that's after the deadline for

```
 1   completion of nonexpert discovery, and I've made it very clear
 2   that the parties should not anticipate further extensions of
 3   these deadlines.
 4           MR. RYDER:  Your Honor, if I may, at least with
 5   respect to both DCR and FERC, we served a subpoena upon DCR a
 6   year ago, and they have refused to respond in any meaningful
 7   manner whatsoever.  They haven't produced a single document.
 8   They haven't produced objections whatsoever.  And with respect
 9   to FERC, we were before Your Honor this summer, and we still
10   have not received any accommodation from FERC.
11           THE COURT:  Have you gone to their website and looked
12   for these documents?
13           MR. RYDER:  Yes, Your Honor.  And there are documents
14   available, but there certainly is not the extent of the
15   documents available that we need.  And especially we keep
16   running into the error of seeing CEII and privileged
17   information with respect to the documents that are listed.  But
18   there's not actually any documentation available on the
19   website.  So it was our hope, once we have the meet and confer
20   with FERC, that we can further identify with them and narrow
21   these are documents we can get on line.  These are all the list
22   of ones that we are not even able to access, never mind the
23   ones that aren't even posted on line, Your Honor.
24           THE COURT:  Well, you have Mr. Morgan's telephone
25   number, you have Mr. Morgan's contact information, Mr. Morgan
```

1  is in Springfield, you can work with Mr. Morgan.  Go ahead and
2  do that.  But, again, I'm not extending deadlines for these
3  purposes.  You know, it was my view with respect to the FERC
4  subpoena that it was not pursued appropriately by the
5  defendants in the first place, that those documents -- you
6  know, that there was certainly great merit to Mr. Morgan's
7  opposition to the way in which the defendants had proceeded
8  with respect to those documents.  And so, again, I'm not
9  extending these deadlines for these purposes.  So -- nor am I
10 extending the deadlines for the defendants to make their expert
11 disclosures on this basis.  These are principally document
12 subpoenas anyway.
13          MR. RYDER:  With respect -- especially with respect to
14 FERC, Your Honor, the deposition testimony would be
15 particularly useful because FERC conducted an investigation at
16 the dam following the incident, and there's specifically
17 identified individuals.  So their testimony, especially where
18 we haven't been able to get any documentation --
19          THE COURT:  You may or may not get them to show up.
20 Do you understand, you may or may not get them to show up?  I
21 recall reading that, you know, the statutes, and they're not
22 necessarily going to show up for deposition is my recollection
23 of the -- if they produced a report that discloses the results
24 of the investigation, they are very likely to say that's all
25 we're going to do, I think.

1  MR. RYDER:  At this point, Your Honor, I haven't
2  received a response, but it also hasn't been served.  So I
3  haven't received a response from --
4  THE COURT:  Okay.  So I'm just -- let me just go back.
5  All right.  I entered -- so the Court entered its memo and
6  order on your motion to compel for its compliance on August
7  21st, and here we are on December 8th and the defendants are
8  now serving these subpoenas.  Again, this is not going to be a
9  basis for any delay in the deadlines that the Court has set.
10 It's just not.
11 August 21st -- September, October, November, three
12 months.  And when did you receive the subpoenas, Mr. Thompson?
13 MR. THOMPSON:  This week, Your Honor.  I forget.
14 THE COURT:  They could have gone out in August, and
15 they didn't, apparently.  So that's -- again, I'm not
16 deferring, I'm not delaying, I'm not giving you extensions on
17 this basis.  The plaintiffs are entitled to have this case
18 addressed in a timely manner.  So -- okay.
19 So leaving that aside, Mr. Thompson, now that we've
20 addressed that, a case management conference sort of at the
21 conclusion of nonexpert -- of expert discovery to see whether
22 or not the parties can really -- you know, can mediate a case
23 where there are such, you know, significant injuries but where
24 there's also apparently, you know, significant insurance
25 coverage that may or may not be available depending on the

1  position that the defendants have taken, that the insurer takes
2  but....
3          MR. THOMPSON: I think the timing sounds good to the
4  plaintiffs, Your Honor.
5          THE COURT: Okay. So Mr. Ryder and Ms. Federico, does
6  that sound right?
7          MR. RYDER: No problem, Your Honor, on our end.
8          THE COURT: Okay.
9          MS. FEDERICO: Yes, Your Honor.
10         THE COURT: Okay. So, you know, if I looked at the
11 week of April -- if I looked at the week of April 25th, I
12 essentially have nothing on my calendar. I could be available
13 for a case management conference. We can conduct it remotely.
14 I know that none of the lawyers are really probably anywhere
15 near Springfield, so probably remote is the preference. But I
16 could do it really any time that week, any day, any time. Let
17 me start -- I'll start with the defendants, Ms. Federico,
18 Mr. Ryder, do you have a preference in terms of a date -- is
19 that week possible for you? Let me start there.
20         MS. FEDERICO: Your Honor, the only two days that pose
21 a problem just from prior are other cases with trial
22 conferences scheduled are the 26th and 27th. But I can do the
23 25th or the 28th or the 29th.
24         THE COURT: Okay. How about you, Mr. Ryder?
25         MR. RYDER: Going off of Attorney Federico, the 25th,

```
 1  28th, and 29th work for me.
 2          THE COURT:  Okay.  So let me focus on the 28th, if I
 3  can, and see if the plaintiffs would be available -- if
 4  plaintiffs' counsel would be available on the 28th for a case
 5  management conference.
 6          MR. THOMPSON:  I have a "do not schedule" on that day,
 7  and going by memory, I believe my daughter's graduating from
 8  college that weekend.
 9          THE COURT:  Oh, wow.  Congratulations.
10          MR. THOMPSON:  Thank you.
11          THE COURT:  Let's look to -- how about the 25th, then,
12  the early part of that week; do you think that would be
13  acceptable?
14          MR. THOMPSON:  The 25th should be fine.
15          THE COURT:  Okay.  Oh, and Mr. Ryder and Ms. Federico,
16  you said the 25th would be okay?
17          MS. FEDERICO:  That works, Your Honor.
18          MR. RYDER:  Yes, Your Honor.
19          THE COURT:  And Ms. Gielowski and Ms. Fareed?
20          MS. FAREED:  The 25th works, Your Honor.
21          MS. GIELOWSKI:  Yes, Your Honor, that date works for
22  me.  Thank you.
23          THE COURT:  Okay.  Do you prefer morning, afternoon?
24  I'm truly indifferent one way -- well, why don't we say 2:00
25  p.m.  Why don't we say at 2:00.  And, again, we'll do this
```

 1  remotely.  And the principal topic, you know, again, is are we
 2  moving towards dispositive motions, is there a basis for
 3  dispositive motions, is this a case that should be set up for
 4  mediation?  If so, you know, a case of this magnitude where
 5  there is insurance coverage, you may very well be -- you know,
 6  you may be looking at a private mediator as opposed to the
 7  court mediation services.
 8          On the other hand, you know, the magistrate judges of
 9  this court are available if -- and to serve as mediators, and I
10  think you -- we don't promise that any particular magistrate
11  judge would mediate a particular case, but we do try to honor
12  the parties' preference so that if you have a particular
13  magistrate judge, if you wanted to use the court-sponsored
14  mediation services, and you think there is a particular
15  magistrate judge who might be -- you know, that all the parties
16  could agree would be helpful.  But, again, if it's private
17  mediation and you can mutually agree on a private mediator,
18  that's fine with me, too.
19          And if you sort of report back to the Court in late
20  April that you genuinely think this is a case that should be
21  mediated in good faith, that you in good faith and, you know,
22  you talked, you have a genuine basis for believing in good
23  faith that mediation might be productive, you know, I'm willing
24  at that point to defer the dispositive motion deadlines to the
25  extent those are even in play in the case, okay?

1          Okay.  From the plaintiffs' point of view,
2  Mr. Thompson, anything else we need to address?
3          MR. THOMPSON:  I don't think so, Your Honor.  Thank
4  you.
5          THE COURT:  Okay.  Okay.  Ms. Fareed and
6  Ms. Gielowski, do you agree with Mr. Thompson?  Just shake your
7  head.
8          MS. FAREED:  Yes.  Thank you, Your Honor.
9          THE COURT:  Okay.  Mr. Ryder, anything else on behalf
10 of your client?
11         MR. RYDER:  No, Your Honor.
12         THE COURT:  Ms. Federico, anything else?
13         MS. FEDERICO:  No, Your Honor.  Thank you.
14         THE COURT:  Okay.  Thank you all very much.  Take
15 care.  Have good holidays.
16         MS. FEDERICO:  Take care, too.
17         (Recording ends at 2:53:14)
18
19
20
21
22
23
24
25

```
 1                CERTIFICATE OF OFFICIAL REPORTER
 2
 3          I, Linda Walsh, Registered Professional Reporter
 4   and Certified Realtime Reporter, in and for the United States
 5   District Court for the District of Massachusetts, do hereby
 6   certify that the foregoing transcript is a true and correct
 7   transcript of the audio-recorded proceedings held in
 8   the above-entitled matter, to the best of my skill and ability.
 9               Dated this 24th day of January, 2022.
10
11
12                    /s/ Linda Walsh
13                    Linda Walsh, RPR, CRR
14                    Official Court Reporter
15
16
17
18
19
20
21
22
23
24
25
```