UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYNTHIA FAREED AND JAMES MASELAN, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF JASER AL-RAKAH, CYNTHIA FAREED AND JAMES MASELAN, CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF THEEB AL-YAMI, ANNA SEPANEK, INDIVIDUALLY, TYLER SAN JURJO, PPA ANNA SEPANEK, ISABELLA SAN JURJO, PPA ANNA SEPANEK, JENNIFER GALLUCCI, INDIVIDUALLY, BRAYDEN GALLUCCI PPA JENNIFER GALLUCCI, and SOFIA GALLUCCI PPA JENNIFER GALLUCCI,<br>    Plaintiffs,<br>      v.<br><br>CENTRAL RIVERS POWER MA, LLC, WARE RIVER POWER, INC., and JOHN DOE #1,<br>    Defendants, | Civil Action No. 20-11053-MGM |

MEMORANDUM AND ORDER REGARDING
MOTION TO ENFORCE SETTLEMENT
(Dkt. Nos. 115 & 137)
June 26, 2023

MASTROIANNI, U.S.D.J.

I. BACKGROUND

The origin of this case was a tragic incident that occurred on April 14, 2020, when an unscheduled release at the Red Bridge Dam caused the volume of water in the Chicopee River to increase dangerously fast at a recreation area downstream. Two children, Tyler San Jurjo and Brayden Gallucci, who were playing in shallow water near the edge of the river were swept away by the rapidly rising water. Anna Sepanek ("Sepanek"), mother of Tyler, and Jennifer Gallucci ("Gallucci"), mother of Brayden, entered the water to assist Tyler and Brayden, leaving their other children, Isabella San Jurjo and Sofia Gallucci, on shore. The women became trapped in the swirling

water and yelled to Isabella and Sofia to call 911 for emergency assistance. At this point, two men sitting on the shore, Jaser Al-Rakah and Theeb Al-Yami, entered the water to help. They were unable to assist or get back to shore, slipped under the water, and drowned. Tyler, Brayden, Sepanek, and Gallucci remained trapped in the river for between fifteen and thirty minutes before they were rescued by professional first responders and transported to the hospital.

In 2020, Plaintiffs—the estates of Jaser Al-Rakah and Theeb Al-Yami (together the Estate Plaintiffs), Sepanek, on behalf of herself and her two children, and Gallucci, on behalf of herself and her two children (together the Family Plaintiffs)—filed a complaint in Massachusetts state court. Plaintiffs asserted wrongful death and personal injury claims against Defendants—Central Rivers Power MA, LLC (Central Rivers) and Ware River Power, Inc., respectively the owner and operator of the federally-licensed Red Bridge Dam. Defendants removed the action to this court, asserting federal question jurisdiction because the Federal Power Act, 16 U.S.C. §10(c) and §803(c), preempts state law with respect to the standard of care owed by Defendants.

The parties engaged in discovery and the case was set for trial on May 30, 2023. In the fall of 2022, the parties requested an extension of time to file dispositive motions and then, on October 28, 2022, the parties filed a Joint Motion to Approve Settlement Under Seal. The motion stated that they had "reached settlements of all claims contingent upon this Court's approval" and requested leave to file their motion for approval of the settlement under seal. (Dkt. No. 113.) The court granted the motion on October 31, 2022, but the parties did not file their Joint Motion to Approve Settlement.

Several months later, shortly after the January 17, 2023 deadline passed without the filing of dispositive motions, Defendants filed a joint motion to enforce settlement. (Dkt. No. 115.) The court denied the motion, without prejudice, based on noncompliance with technical filing standards. At this point, the court's attention was diverted away from the minor procedural shortcomings of

Defendants' motion by letters Sepanek and Gallucci sent directly to the court stating their opposition to the settlement. The court held a status conference at which Sepanek and Gallucci were present. They explained that they were not happy with their counsel or the settlement and were seeking a new attorney. The court granted them time to find new counsel and granted prior counsels' request to withdraw as their attorneys. Although the settlement discussed during the fall of 2022 had been for all claims by all plaintiffs, once the Estate Plaintiffs executed their releases, Defendants disbursed funds to them, and, on April 10, 2023, the Estate Plaintiffs filed a stipulation of dismissal (Dkt. No. 132).

New counsel for the Family Plaintiffs entered their appearances on April 24, 2023. Several days later, Defendants and the Family Plaintiffs filed a Joint Motion to File Papers and Conduct Hearing on Pending Motion to Enforce Settlement Under Seal (Dkt. No. 137) and a Joint Status Report (Dkt. No. 138). The court granted the motion, set a schedule for the Family Plaintiffs to file their opposition and Defendants to file their reply, and scheduled a hearing. The court later discovered that contrary to the parties' position, there was no Motion to Enforce Settlement pending. To remedy this procedural wrinkle, the court construes the April 24, 2023 joint motion as including an assented-to renewal of the previously denied Motion to Enforce Settlement (Dkt. No. 115) and will grant the motion nunc pro tunc.

The Family Plaintiffs filed their opposition under seal on May 12, 2023 and Defendants filed their reply, also under seal, on May 24, 2023. The court held a remote hearing on June 8, 2023. During the hearing, the court proposed holding an evidentiary hearing to establish the facts related to the settlement negotiations, but the parties agreed the court could resolve the Motion to Enforce Settlement without holding such a hearing. Counsel for the Family Plaintiffs conceded that prior counsel acted with apparent authority when the settlement was reached and declined to identify any evidence that prior counsel lacked actual authority to settle claims on behalf of the Family Plaintiffs.

Instead, counsel argued the negotiated settlement has not yet ripened into an enforceable agreement because (1) the court has not yet approved the settlement, (2) the settlement remains contingent until releases are signed by all Plaintiffs, and (3) the Family Plaintiffs are not obligated to sign the releases prepared by Defendants because those releases include additional material terms. Defendants took the position that there was an enforceable agreement once they reached an agreement with Plaintiffs' prior counsel as to all terms material to the settlement and notified the court that a settlement had been reached.

## II.  DISCUSSION

While a case remains pending in federal district court, "[a] party to a settlement agreement may seek to enforce the agreement's terms when the other party reneges." *Malave v. Carney Hosp.*, 170 F.3d 217, 220 (1st Cir. 1999). A settlement is enforceable if the parties reached agreement as to all material terms, *Quint v. A.E. Staley Mfg. Co.*, 246 F.3d 11, 14-15 (1st Cir. 2001), and the settlement was accepted by each party or an attorney with the requisite authority to settle claims, *Kinan v. Cohen*, 268 F.3d 27, 32 (1st Cir. 2001). "[T]he party who seeks to keep the settlement intact may file a motion for enforcement." *Malave*, 170 F.3d at 220. As this case was removed based on federal question jurisdiction, the court applies federal law when determining whether to grant Defendants' motion to enforce the purported settlement. *Kinan*, 268 F.3d at 32.

The First Circuit has recognized that, when entering a conditional dismissal order, a district court may rely on representations that a settlement agreement has been reached made by an attorney "cloaked with apparent authority." *Id.* However, a district court applying federal law can only enforce a settlement reached by an attorney who had actual authority to settle a client's claims. *Id.* "Where there is a material dispute about the giving of authority, an evidentiary hearing is generally required." *Id.* If the court determines an enforceable settlement was reached by an attorney with actual authority, a repudiating party may be ordered to follow-through with the settlement. *Id.* At

4

that point, the recourse for an unhappy party is an action against their counsel, not release from the enforceable settlement. *See Adulky v. Lubin & Meyer, P.C.*, 205 N.E.3d 381, 385-86 (Mass. App. Ct. 2023) (stating that a legal malpractice claim may lie under Massachusetts law if a party can demonstrate their attorney did not meet professional standards when negotiating a settlement).

Since all the parties in this case agreed there are no material fact disputes requiring an evidentiary hearing, the court agrees an evidentiary hearing is unnecessary and makes findings based on the documentary evidence and the uncontested representations made by counsel at the hearing. The court first finds that predecessor counsel for the Family Plaintiffs had actual authority to settle claims on their behalf between October and December 2022. Current counsel for the Family Plaintiffs conceded that predecessor counsel had apparent authority and declined to present evidence challenging counsel's actual authority to bind the Family Plaintiffs. Additionally, counsel for the Family Plaintiffs did not identify any terms of the settlement that were inconsistent with their positions at the time the putative settlement was reached or during the period when the releases were finalized.

The emails between the Family Plaintiffs' predecessor counsel and Defendants' counsel provide the most relevant evidence about the terms of the settlement. Based on a review of the attorneys' correspondence, the court finds counsel agreed to a settlement that had four material terms. First, the specific amounts to be paid to the two estates and the two families. Second, all Plaintiffs would execute releases that included confidentiality language. Third, there had to be "approval of the minor settlements by the Court." (Email of Oct. 14, 2022, Dkt. No. 115-2.) Fourth, and finally, Plaintiffs agreed to dismiss all claims, with prejudice. These terms were sufficiently definite to create an enforceable settlement once counsel reached agreement. *See Quint*, 246 F.3d at 14-15 (rejecting arguments that a settlement was not enforceable because three material terms were too ambiguous).

The order in which these terms had to be met was not set out in the attorneys' emails. However, Plaintiffs need not dismiss their claims until Defendants have paid over the funds, Defendants need not pay the funds until after Plaintiffs have signed the releases, and Plaintiffs need not sign the releases until after the court has approved the settlement. Therefore, despite finding that the parties did reach an enforceable settlement last fall, the court will not require Plaintiffs to sign the releases unless and until the court approves the settlement, which it cannot do until a motion for court approval is filed.

Last fall, Plaintiffs' prior counsel agreed to file the motion, but he did not do so before withdrawing as counsel for the Family Plaintiffs. Based on the context and the language used by predecessor counsel, the court concludes he personally offered to file the motion without obligating Stepanek or Gallucci to take any specific steps to facilitate court approval of the settlement. Therefore, the court will not require successor counsel to file the motion or to assist with its preparation. Instead, Defendants shall file the motion for court approval of the settlement on or before July 17, 2023.

### III.   CONCLUSION

For the foregoing reasons, the court construes the Joint Motion to File Papers and Conduct Hearing on Pending Motion to Enforce Settlement Under Seal (Dkt. No. 137) as including an assented-to motion to renew the Motion to Enforce Settlement (Dkt. No. 115) and grants the motion nunc pro tunc. The court then denies the renewed Motion to Enforce Settlement, without prejudice to a further renewal of the motion if the settlement is approved by this court.

It is So Ordered.

    /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge